turn next to Osariemen v. Wilkinson, 18-1083. Ms. Franklin. Good morning and may it please the court. Beatrice Franklin from Sussman Godfrey for the petitioner Kelly Osariemen. There are two paths to remand in this case. The first is to hold that the agency impermissibly departed from MAM's rigorous procedural requirements. The second path is to reject the agency's timeliness and credibility determinations, which were infected with legal error and unsupported by substantial evidence. The agency's error concerning MAM means that the entire proceedings below are invalid. MAM established that when an IJ encounters indicia of mental incompetence, the IJ must make a further inquiry to determine whether a respondent is competent and the IJ must articulate that determination and her reasoning. MAM is crystal clear about those requirements. Here, there were indicia of mental incompetence. Mr. Osariemen submitted ICE's own medical records showing his PTSD diagnosis and his medical treatment, including prescription medication. Those are at pages 149 to 50 of the appendix. Mr. Osariemen repeatedly testified that he suffered from severe PTSD and depression. PTSD is a potential indicator of mental incompetence, as DHS itself identified in Calderon-Rodriguez, a case that is really on all fours with this one. So the MAM inquiry was triggered. But the IJ did not accept the PTSD diagnosis. Instead, the IJ discounted the PTSD because Mr. Osariemen was first diagnosed in Nigeria. The IJ did not The IJ did not mention the PTSD once in her oral ruling. And the BIA affirmed, that's despite the fact that Mr. Osariemen attempted to commit suicide and was found- There was one question. There were a bunch of questions about his understanding on pages 479, I think 481 of his various rights. And then at the end, and I understand your point as to what's required, but there was with respect to your psychological issues, have you understood everything today? He answered yes, right? Yes. It was a reference to psychological issues, right? There was a reference. That question was asked at the very end of the hearing after Mr. Osariemen pleaded for the IJ to take his PTSD seriously and consider it with respect to his claim. I'll note that in MAM itself, the IJ did ask some competency questions. The IJ had asked the petitioner in MAM if he was able to represent himself and if he was able to proceed. And in that, that wasn't enough because the IJ hadn't considered the evidence that was in the record before the IJ of medication, of mental illness. Let me ask you about your second point that you said on the timeliness issue, obviously there was no consideration of the PTSD as related to the timeliness, but that would be a remand as well. In other words, you don't necessarily win on that, right? There would be more exploration of whether or not... He actually didn't affirmably say at any point in the hearing that the reason he didn't file was because of that. So that's not necessarily a winner for you. It's just a remand, right? Well, in any of these cases, it would be a remand. Either if the court agrees that the entire proceedings were invalid because the IJ failed to follow MAM, or if the court agrees that the timeliness determination, the credibility determinations were incorrect. You're asking for a remand. I mean, I granted the petition, which leads to a remand, right? Exactly, Your Honor. Yes, that's correct. I thought you said they couldn't rely on timeliness. I just thought you were making a broader argument, which I was confused about, but you clarified that. Yes. I mean, and the government itself points out that if a court agrees with us on timeliness and credibility, the appropriate relief is to remand to consider the actual underlying merits of Mr. Osorio's claim of fear of persecution, because the government doesn't even attempt to defend the IJ's analysis under the incorrect legal standards saying that it was prosecution, and therefore it couldn't be persecution. On timeliness, how is this case distinguishable from NUMEROF? I don't recall which case exactly NUMEROF is, but if the court is asking whether this is a legal question that the court has jurisdiction to consider, I think it's actually most analogous to Gabe versus Holder, because the issue here is that the IJ didn't consider the correct circumstances, which could potentially be extraordinary circumstances. Neither the IJ nor the BIA considered whether the PTSD could be an extraordinary circumstance that warrants an exception to the one-year filing deadline, even though Mr. Osorio made that precise argument to the BIA. In NUMEROF, I believe that this court affirmed the BIA decision because the alien didn't explicitly argue before the IJ that his mental health caused his application to be late, and the IJ otherwise acknowledged and considered his mental health problems, but deemed him to be competent. I think that's exactly the distinguishing factor, is that the IJ here didn't consider Mr. Osorio's PTSD. At page 92 of the appendix, the IJ asks, you're taking medication for your stress, correct? Mr. Osorio answered in the affirmative, and then the IJ moved on to a completely different topic. That's not what we would expect if, for example, in a criminal proceeding or in a civil proceeding in the trial court, if a party, particularly an unrepresented party, said that he or she was being treated for mental illness and was taking medication for mental illness, we would expect that the trial court would go on to ask questions about that medication. Here, we would maybe expect the IJ would ask DHS if the DHS had further information about Mr. Osorio's diagnosis or about his medical treatment, because MAM makes clear that DHS has an obligation to present the most comprehensive and up-to-date evidence of a petitioner's potential incompetence. None of that happened here. The IJ simply moved on, and the IJ never even made an explicit finding of competence. The IJ didn't acknowledge the PTSD in her oral ruling. She never affirmatively stated that she had found that Mr. Osorio was competent. Have we ever required that? Well, MAM itself requires that the IJ make a determination as to competence and articulate that. You're making a much more specific claim that it's got to be sort of magic words of competence? No, I don't think it's magic words, Your Honor. I think I interpret MAM to say that where there are indicia of potential incompetence, as there are here, the IJ has an obligation to make a further inquiry, which would reasonably include questions about medication and the potential effects of prescription medication. And then the IJ has an obligation to consider safeguards, which of course are fact-specific. And then the IJ has an obligation to articulate her reasoning and her findings as to whether further safeguards are warranted, and if they're not warranted, why? Again, Calderon-Rodriguez is squarely on point here. That's the case from the based on a diagnosis of PTSD and depression, just like Mr. Osorio. And there, the IJ asked several competency questions. The IJ had some medical records in the record before her, and the IJ found the petitioner to be competent. But the Ninth Circuit said that wasn't enough, because the IJ hadn't fully engaged with the most complete and accurate evidence of the petitioner's medical treatment. The government doesn't distinguish Calderon-Rodriguez in its briefs. And I think that that case is really dispositive here. On the timeliness and credibility points, I'll just note that the failure to sufficiently acknowledge Mr. Osorio's PTSD is relevant to those determinations as well. As we pointed out in our briefs, the IJ misread the record in several points, including an understanding that Mr. Osorio had used a fake ID on several occasions when he hadn't. Had the IJ considered the evidence correctly, and had the IJ considered Mr. Osorio's explanation that his PTSD means he has difficulty interacting with government authorities, the IJ may have reached a different conclusion as to credibility and as to timeliness. And if I may briefly address corroboration as well, that's a yet additional error. Both the IJ and the VA faulted Mr. Osorio for not presenting any corroborating evidence from his family members who had firsthand experience of his detention and torture at the hands of the Nigerian military. But Mr. Osorio did present that evidence. He submitted an affidavit from his mother, who gave firsthand corroborating testimony to the BIA. And the BIA did not consider the affidavit, did not acknowledge it in its opinion, despite saying that Mr. Osorio had submitted another affidavit from his uncle, which it did not find to be particularly significant because his uncle did not have firsthand experience, unlike his mother. Can I ask you a follow-up question about timeliness? Is it your contention that an IJ must make an explicit finding as to mental health in all cases where an asylum application is untimely, or only one in which a mental health issue is before the IJ? So I think that in every case, I mean, if there's not a question of timeliness, if the petition doesn't raise a question of timeliness, doesn't raise the issue of PTSD, I don't think that the IJ would have a sui sponte obligation automatically to consider it. But here, where Mr. Osorio did talk about his PTSD repeatedly, and then did make the specific timeliness argument to the BIA, the BIA- He didn't link those two things. He did talk about his PTSD, and obviously he was making a timeliness argument. But I don't think there's anywhere in the record where he said, the reason I didn't meet the timeliness requirement is because my PTSD, right? That's true. That's true before the IJ. But he did make the specific argument linking his PTSD and timeliness to the BIA. The BIA could have remanded and should have remanded for the IJ to consider that. And I'll note that the government doesn't argue that there is some sort of waiver here. So it was one of the many errors that the IJ committed. I'm sorry, that the BIA committed in affirming the IJ- So even though he didn't make the argument before the IJ, he could argue that for the first time in front of the BIA relating to his mental illness, preventing him from submitting a timely asylum application. Have we said that in any published opinion? I do not have a citation at my fingertips, Your Honor. I'd be happy to try and come up with one for when I return on rebuttal. But the BIA does have discretion to consider new evidence on appeal. For example, they considered one of the two new affidavits, and the BIA can consider new arguments and then remand. And under what circumstances can it consider new arguments that were not made before the IJ? It's within the BIA's discretion to remand. And how do we assess whether it abuses its discretion then? I think that this- So I'm thinking of, and again, I apologize for not having the case name at my fingertips. But for example, this court has remanded where the BIA didn't consider an potentially dispositive. My reading- That was maybe evidence. I don't know what case you're referring to. There's some other cases where evidence was generally in the providence of the IJ, wasn't presented to the IJ, and then is more specifically presented to the BIA. And then maybe we say, all right, the IJ should have been allowed to reconsider that on remand from the BIA. But this is not this case. This case is there's no argument. There's no linkage, as just Bianco pointed out. I'm talking about the asylum application and the time in this issue. Yes. So again, Your Honor, I will try and have a case for you when I come back from my rebuttal. But again, the government hasn't argued that there was waiver here. The government simply argues that this is a question of fact. I will note that there was additional evidence, of course, the PTSD that the BIA didn't give sufficient weight to. So it's not only a new argument, but it was also enhanced evidence, including the evidence of a suicide attempt, which was just three days after the IJ hearing. And before I forget, Ms. Franklin, you are doing this pro bono as part of our pro bono panel. Is that correct? Yes. Thank you very much. I'm the chair of the pro bono committee. Judge Bianco is also a member of that committee. So thank you for that. It's my pleasure. Ms. Gordon. Thank you. May it please the court. I'm Virginia Gordon for the respondent. Your Honors, here the record simply does not compel the conclusion that Mr. Osirman was not competent to proceed in his merits hearing. And that shows in the record that he did have what is required, the rational and factual understanding of the nature and object of the proceedings. He freely chose to represent himself and he had and took advantage of the reasonable opportunity to examine and present evidence, including a detailed examination of the evidence that the DHS submitted regarding the country reports for Nigeria. He also has not demonstrated that the record compels the conclusion that he was credible or that he rehabilitated that credible testimony. Yes. You say it doesn't compel the conclusion, but there is a case law that Ms. Franklin cited that says there has to be sufficient inquiry. Isn't that the first question? Was there a sufficient inquiry to make that determination? And was there a finding of not magic language, but some finding of competency when you have a significant issue that's been presented of PTSD? That's the first question, right? Whether or not there was sufficient inquiry and you can correct me if I'm wrong, but the only question on that was with respect to your psychological issues, have you understood everything today? He answered yes, and then the judgment was on, right? Yes, your honor, that is correct. The specific question about the medication was only at that one time early on when, and although not ideal, the IJ did ask the questions to determine whether he had the rational and factual understanding of the nature of the proceedings. And so I don't think that we would characterize the record as saying that she the IJ completely disregarded the PTSD existed. She questioned where the diagnosis was, but I don't think that that leads to the record compelling the conclusion that she just disregarded it altogether. What about the lack of a finding? That should be, I find based upon his demeanor today, his responses to my questions, that he's competent. Isn't there supposed to be a finding on that? What matter of MAM does ask her to make a finding, and so it's not ideal that she didn't specifically state that I found him competent, but the record still, Mr. Osirman still has to show that the record compels the conclusion that he was not competent. And so although the IJ didn't specifically say you are competent, she asked all of the questions to show that he had the rational and factual understanding of the nature of the proceedings. And in each question he answered in affirmative, stating that he did understand. Why is it that there's this requirement in MAM, and I take it other decisions, that there be a finding? Your Honor, I can't specifically say why exactly the requirement is, but the board, I would suggest that it's for protection for a person who is mentally incompetent. So the protection of the non-citizen there before the proceedings, and it makes sense to protect them. And here, I'm sure we all would have liked to have seen the IJ say that she made the competency finding, but we still are, the standard here is to look at the record and see what it compels. And when looking at the record and seeing that Mr. Osirman was lucid, intelligible, articulate. It might be that the IJ was a little confused about, there was this whole issue about being through ICE records indicating this significant mental issue in the United States. So isn't that a cause of concern too, that the judge may have been confused? There's concern that the judge maybe didn't seem to understand what her records, I don't know if she'd understand what her records were before her, because I can't speak for her. What we see in the record is that she saw that he was taking medication and she asked him about his medication. And then what the test is for competency and what this court has cited several times is that, does the non-citizen have a rational and factual understanding of the nature and object of the proceedings? Was he able to consult counsel? If there was one here, he freely chose not to have counsel. And three, did he have the reasonable opportunity to present and examine evidence? And the record shows that he did for all three and that he answered in the affirmative to all the questions about what he understood. And because the record does not compel that he was not competent, despite the PTSD, which we acknowledge is a serious diagnosis, he showed his competence at that hearing by being able to, and we see it in the record, answer the questions clearly, lucidly. He challenged evidence. The immigration judge also noticed that he displayed a certain level of, I'm sorry, the word is evading me, but that he was sophisticated enough to provide his answers and to show that at that hearing, he understood what was happening. And that is what the ultimate test is. So though there were no magic words of, I am making a competency finding, the record still shows that he was competent to proceed and the immigration judge did not, then after asking the questions, see any need to go backwards and say, we need to do this hearing again. So it seems to me that competency is such a fundamental issue, right? At least in the civil litigation context outside of immigration proceedings. And you've, I think, acknowledged rightly that this is not ideal. But you also ask us to look away from the failure to make an explicit finding to the other standards, the review standard, that the record doesn't compel a conclusion that he was not competent on appeal. Why shouldn't we devise a rule, given this case and the troubling aspect of this case, that says that with respect to competency, that's a little different. In other words, in other categories of findings that we would ordinarily expect from the immigration judge, it's true if it doesn't compel the conclusion or contrary conclusion, then petitioner, you lose on that issue. But with respect to competency, because of the fundamental nature of the it's, we need, and the BIA should require an explicit finding. Is there anything wrong with that? I mean, I, you know, well, no, Your Honor, there's nothing wrong with saying that they need the explicit finding. But, and, and I think MAM wants that. And unfortunately, here, the IJ didn't explicitly state it. So you're suggesting that you want the explicit finding saying that IJ needs to find the person competent? We would be holding the BIA to its word. Right. That's correct. What's wrong with that? Before I do something new, I always want to figure out what's wrong with it. So I'm just, and it's just a suggestion. It's not something, you know, that I've really thought about. I, I can't say that we would say that there's anything wrong with doing that. I think if we look at this particular case here, even if the court said it, I don't think that means the court needs to remand this case. The court can acknowledge that the record does not compel the conclusion, but it would be better for the board and the IJs to make that explicit statement when they have this in front of them. They have MAM. MAM already does give the instructions. We, we acknowledge that. And as I said, it wasn't ideal that the IJ didn't say it. But when you look at the record, it, we still have that standard that the record has to compel the outcome might be that the IJ then rewrites it and says he was competent. And then it comes back and all of the same findings are made. So it's true. That's true of so many issues. Right. There's also another issue that has been raised and we were about to address it on credibility. There are two things that trouble me. First is, I think you can see that he did use a false identity when he applied for the visa. So that was just, and the ALJ said it's significant that there were multiple lies. So there was the lie about the identity. It was the lie to the police officers, but obviously that was one. So I could have potentially impacted the credibility determination. And I was scratching my head about the BIA. They referenced the uncle and him not having personal knowledge yet with the uncle's declaration was the mother's, which did have personal knowledge and they say nothing about her. And obviously that relates to credibility. So if you address both of those things and you know, together, why isn't that problematic? I guess would be the question. Yes, Your Honor. And well, with regard to the misreading of the NIV detail, we do see that the IJ did that. A close reading of it shows that it does not say that he provided the false name to the consular officer. But when, what the IJ stated was, she found it significant. She's talking in the hearing, but she also noted that he lied on this occasion and he lied on this occasion. And as the court has said, one lie that's significant can question the whole credibility. So even if, and it can overlook an IJ's error in reaching our conclusion. So if the IJ made that error on the NIV detail, we have no doubt that Mr. Osarnan lied by giving a false identity to the police when he was pulled over for driving on the wrong side of the road. And the IJ seems to care. It appears from her decision, the way she wrote it, that these lies were important. If we take one away, I think the court can be confident, looks the court can be confident that she's going to find that other lie still significant because it was to the law enforcement officer. And with regard to the board, I did want to address that because the board cannot review facts. It's reviewing the IJ's decision for clear error on fact issues. And it's reviewing the IJ's decision to NOVA for legal questions. And the bringing the mother's affidavit in after the IJ hearing is something that he could have done at the IJ hearing. So the problem with his corroboration was it was available at the time of the IJ hearing and he didn't provide it. The board has the ability, if it wants to, to hear additional evidence, which they did with respect to the uncle. The uncle's declaration wasn't before the IJ. So they have the authority to do that. And they decided to look at the uncles and not mention the mothers. So it's not whether they have to, I guess, but whether or not they chose to, and for whatever reason chose to only consider one and not the other. And yes, that's correct. And I can't speak to why the board did not look at the mothers. I know what the board did, but in the order where it is in the record, it seems I had trouble finding it myself. They have personal knowledge. You said the security forces came to the home, right? So it would have resolved their concern of someone not having personal knowledge, right? And it may have resolved that. Also, when I read the mother's declaration, I saw one of the IJ's concerns was that they had proof about which isn't mentioned in the mother's affidavit. So there are a lot of fact-finding issues about that statement that I can't get into because the agency didn't, but they could have other questions about it that, you know, if the court felt it had to remand on that because of the persecution, but there's no, but since the board never got to the matter of persecution, that's really not before the court. We're really still looking at the timeliness and the credibility finding. I believe the court can be confident that it would stay the same because he did lie to the law enforcement and she felt that was important. And that one lie can damage his entire credibility. His credibility, the decision on credibility doesn't have to go to what his claim was about. It's just if there's a question and for the judge, it appears the way she wrote this, that lying to law enforcement was significant to her. And he also challenged everything that law enforcement said about him. And so she had some doubts about his believability. And if there are no further questions for the reasons that the record did not compel the conclusion, we believe that the court should deny the petition. Oh, I'm sorry. Would you just briefly address this, the timeliness issue relating to the settlement application and the, you know, the fact that he didn't make an argument before the IJA, but makes the argument before the BIA? Yes. Well, with timeliness, what the court has said on these timeliness cases is that the PTSD may be an exception. However, the petitioner would need to explain to the IJ why the PTSD impacted his ability to timely file his application. And as Judge Bianco noted in the record, he said he didn't hear about asylum. When he heard about going to Canada for it, he was driving to Canada when he got pulled over, presumably to seek asylum. And so he was seeking asylum somewhere else, but he chose not to seek it here. And that's what the record is showing. And with the timeliness, it wasn't an error for the IJ to find it untimely when the reason that he gave to her was that he didn't know about it. And he also continued to wait to apply for it, even saying he was going in April 2017 to apply for asylum in Canada. And in any event, if the court really looks at the decision, so the IJ made the timeliness finding and said it was untimely, but she still ultimately adjudicated the asylum application because she found that he was not credible. So it would get rid of all of his claims. And then she made an alternative merits finding where she considered his claim and denied and said she wouldn't find him eligible. So ultimately, if the court remanded on timeliness, you can be confident that the IJ has addressed the asylum claim, even though she made that untimeliness finding, she did still actually address the application. Well, was he ineligible for asylum because of the credibility issues or for some unrelated issue? Well, if we put timeliness aside and we assume everything was and based on his lack of credibility, and then when you refer to ineligibility, you were really referring to the adverse credibility. Yes. Her initial yes, denial is on the adverse credibility. And then alternatively, she found the merits were not did not meet the criteria as well. Okay. That's my question is the merits of the asylum application. Yes, she did an alternate the IJ did an alternative finding to be thorough. And so after she found that he was not credible, she said in the alternative, she would look at the merits and similarly not find that he met his and she would not find that he met his burden to establish that his harm that he was persecuted. And the board did not address that because once the board agreed with the adverse credibility finding that was enough, the board didn't need to get to the alternative merits. And so the alternative merits finding is not before this court because the board did not address it. But just to the point that she did, although the timeliness ruling was made that it was untimely. And though she didn't talk about the PTSD, it really wouldn't affect the fact that she did actually end up considering the asylum claim on both the adverse credibility and the merits. Thank you very much. All right. Thank you. Any questions? Okay. Thank you. Ms. Franklin, you've got two minutes. Thank you, Your Honor. So the case that I was thinking of discussing timeliness was Chen versus Gonzalez 417F3268. But I grant that that was about the consideration of evidence before the BIA, not the consideration of a new argument. In terms of whether there was any waiver because Mr. Simon didn't make the specific claim before the IJ. Again, I will note that the authority that he waived that the timeliness claim. And of course, Mr. Simon was proceeding pro se. And that goes to the heart of the whole issue is that if the court agrees with us that the IJ did not follow MIM and did not respond appropriately to the addition of mental incompetence in the record, then everything has to go back. And we can do this hearing correctly when Mr. Simon is now going to be able to present his arguments with safeguards at the very least being represented by counsel. The government isn't correct to say that we have to show that the record compels that Mr. Simon is competent. That's not the issue here. The issue is that the IJ did not follow MIM, did not make any findings as to competence one way or another. And so it's a question of law, a question of whether or not the BIA abused its discretion in affirming a departure from its own precedent. I think it's also important to note that the IJ did not ask about Mr. Simon's medication. She noted that he was taking medication and then asked no further questions. She didn't ask what kind of medication. She didn't ask whether there were side effects. She didn't ask the DHS attorney if they had any information about what the potential side effects of the medication were. That's simply not what we would expect where there's evidence in the record of a medication for serious mental illness. I would point this where this court affirmed in the criminal context and competency inquiry that the district court engaged in when there was evidence in the record that the defendant was taking medication for PTSD. The trial court asked exactly the kinds of questions you would expect about the potential effects of the medication, about the symptoms of PTSD, asked the defendant's lawyer and the government lawyer if they believe that the defendant was competent to proceed. In that case, a plea allocution. That's what we would expect the IJ to do under these circumstances. And that's what the IJ didn't do despite the fact that that's what MAM requires. On the credibility question, I will note that, of course, it is possible that the IJ could conclude that a single use of a fake identity made the petitioner incredible. But it's also possible that the IJ could have concluded that a single use of a fake identity was not enough. This court has held that a single instance of untruthfulness, particularly one that takes place outside the context of the immigration proceeding itself, is not necessarily fatal to a petitioner's credibility, particularly where it's due to fear, panic when interacting with government authorities, which is what Mr. Osorioman testified to here. And it wasn't just that... I'm sorry, did you have a question? Uh, no, but I don't know that we have any further questions. I'll give you just, you know, 20 seconds to wrap up, please, Mr. Franklin. Sure. It wasn't just that the IJ thought it was important that Mr. Osorioman had used a false identity on multiple occasions. It was also that the IJ found him incredible because Mr. Osorioman kept challenging the misinterpretation of the evidence. Mr. Osorioman pointed out that the IJ had misread the NIV applicant detail, and that clearly affected the IJ's interpretation of his credibility. Fundamentally, this case should be remanded so that, represented by counsel, Mr. Osorioman can get the fair hearing that he deserves. Thank you. Thank you. Thank you very much. Thank you both. We'll reserve decision and we'll hear argument next.